PALMER AND SOUTHMAYD *against* ASHLEY AND RINGO.

ERROR *t6* *Pulaski Circuit Court.*

An attorney at law cannot be held liable for money collected, unless he refuses to pay it over on demand, or to remit according to instructions. Nor can he be held liable for claims in his hands uncollected, unless culpable negligence is proved.

His liability depends upon the principle of agency, and he holds money, when collected, as a bailee.

If therefore, in a suit against an attorney, where he has receipted for notes put in his hands for collection, the plaintiff fails to prove his collection of money, and refusal to pay over or remit, and also fails to prove culpable negligence, the court is justified in ordering the jury to find as in case of a non-suit.

Absent, RINGO, *Chief Justice.*

This is an action of assumpsit. The declaration contains six counts upon promises by the defendants to sue and collect for the plaintiffs the several notes in the several counts mentioned, and alleges that by the negligence and default of the defendants, the plaintiffs were prevented from recovering the moneys due to them upon those notes. The declaration also contains a count for money had and received. The defendants pleaded non-assumpsit. Before the trial, the counsel for the plaintiffs, after proving the signature of Ashley and Ringo to three papers, introduced them in evidence. The two first of which were receipts given by defendants, in the usual form, for certain notes received of the plaintiffs to sue on and collect. The third was a letter from Ashley and Ringo, which, after acknowledging the receipt of Robert Finley's two notes, payable to plaintiffs, and by them endorsed in blank, says, " the first we have sued on in our own names, and have united a note of Smith, Hubbard & Co., for 327.25, and Williams' note for $471.87, in the same suit. These were all received at the same time, and all endorsed; and we have therefore sued in our own names, and brought the whole in one suit of attachment—and we had previously attached for a debt, due to Hill and Henderson, of about $215, and for a debt due to Whiting and Stark, for $565.71. These two last have a preference of the suit brought in

our own names, as they came first to hand. We believe there will be sufficient to pay all the above, but of this we cannot be certain. We have all there is in custody of the Sheriff's jury, by virtue of an execution, and obtained a verdict that the property was Finley's, and subject to the execution. We consider this a strong assurance that we shall succeed on the attachments. The note not due will, we fear, be an entire loss." The plaintiffs having read those three papers in evidence, close their case without offering any other testimony to the jury. The defendants then moved the court to instruct the jury to find as in case of a non-suit, which instructions were given by the court, and a verdict returned by the jury accordingly.

BLACKBURN, for plaintiffs in error:

The plaintiffs in error proved in the court below, *first*, by the admission of defendants, that they were partners and attorneys in the practice of law. *Second*, that the defendants, by their written contract, undertook, and promised the plaintiffs, to collect said several sums of money specified in said several counts, which implies an abil ity, on the part of the defendants, to do what they had promised; and it was not necessary for the plaintiffs, on the trial in the court below, to prove that it was in the power of the defendants to collect the money on the notes, when they proved that the defendants had absolutely contracted to do it: and the defendants having pleaded non-assumpsit, admitted the continuance of that ability; for that which intervenes after the making of a contract and its execution, to bar the action, must be pleaded specially, or given in evidence on their part of the case. 1 *Chit. Pl. p.* 473. And, *third*, the proof of the outstanding contract of the defendants was strong presumptive evidence of their non-performance of their undertaking. An outstanding promissory note against A, is positive evidence that he was once indebted, but is only presumptive that he still is so. 3 *Star. Ev.* 1241. And if A is not indebted, he must plead that fact, or show it by proof upon the trial; and the presumptive testimony, produced by the proof of the contract of the defendants, was sufficient to have warranted the jury to find for the plaintiffs; and the court would not have granted a new trial in such case. 3 *Stark Ev.* 1247. In the case

of the *Executors of Sneed vs. Elmendorf*, 3 *J. R.* 185, which was an action on the case against Elmendorf for negligence as an attorney, it was held by the court, that "when an attorney gives a receipt for a promissory note, without expressing the purpose for which he received it, the presumption is, that he received it to be collected, and that this presumption was sufficient evidence to support the action against him for negligence in not suing the maker, who afterwards became insolvent;" and from this authority I would conclude, that if the receipt of a note, without saying what for, will raise the presumption in an action on the case that it was received by the attorneys for collection, by suit at law, the undertaking of attorneys to collect money as such attorneys for the plaintiffs, by special and positive contract, raises the presumption that they had the power and ability to do so; which presumption possibly might not be sufficient in an action on the case for negligence to authorize a jury to find for the plaintiff, but in an action of assumpsit, for the non-performance of a contract, it would be conclusive until the contrary was shown; and the jury was sufficiently authorized, from the testimony, to have found a verdict for the plaintiffs.

In the first count of plaintiffs' declaration they allege the employment of Ashley and Ringo, as attorneys and counsellors at law, to collect two certain notes, of and from one Robert Finley, each for $596.51 by a suit at law in the name of the plaintiffs, in the proper court, in a skilful manner; and on referring to the testimony on this point, we find that the whole of these allegations was substantially proven. The breach assigned is, that the defendants did not, nor would collect the said notes by suit in a proper, skilful and diligent manner; and if it was necessary for the plaintiffs to prove positive breaches, here it is proved. As to the count, the testimony is, that the defendants did not, in the names of the plaintiffs, institute a suit against Finley, as they were bound to have done by their retainer as attorneys at law, but sued in their own names, and thereby discharged Finley from all liability to the plaintiffs. Finley could plead the former action of Ashley and Ringo as assignees, &c. in bar against the plaintiffs' subsequent action, and if the defendants recovered judgment against Finley at their own suit, the plaintiffs had neither

any legal or equitable interest therein, and could only look to Ashley and Ringo for their demand.  The result then is that the plaintiffs have lost their right of action against Finley, their obligor, by the unskilful manner in which the defendants brought the suit; and the breach is first proven by the testimony that the defendants did not sue in the name of the plaintiffs; second, by the case being conducted in such a manner as to deprive the plaintiffs of all right of action against Finley, upon the notes that the defendants sued on, and the court below ought to have suffered the jury to have found for the plaintiffs on this count.

The last count in the plaintiffs' declaration is for money had and received, and the defendants gravely contend that there was no testimony given on the trial, in the court below, to support this count.  They first contend that the jury could not know but that the defendants had collected the money on the notes specified in the first count, and therefore, that the jury could not find a verdict, on the special counts, for the plaintiffs.  And secondly, as soon as they approved the last count, they say that there is no proof that will establish the receipt of money by the defendants, to the use of the plaintiffs.  By a letter of the 7th of November, 1834, written by the defendants to the plaintiffs, that was part of the testimony in the court below, and the plaintiffs in error set out in their bill of exceptions, and make a part of the record in this cause, in which the defendants stated that they had received Robert Finley's note to the plaintiffs, dated January 9th, 1834, payable at six months; and also, his note to plaintiffs of same date, at twelve months, each for $596.51, by letter from Messrs. Hill and Henderson, of 4th October last, " both endorsed in blank." " The first we have sued on in our own names." Then, if the defendants have not received money to the use of the plaintiffs, they have received money worth, by filling up the blank endorsement to themselves, to enable them to sue in their own names.  In the case of *Norris vs. Napper*, Lord HOLT said that, though the defendant did not actually receive the money, yet he received a satisfaction, which is money's worth.  2 *Ld. Raymond* 1007.  And in *Barcley vs. Gooch*, where a person gave a promissory note for the debt of another, which the creditor accepted in payment, Lord KENYON held it to be a pay-

Palmer and Southmayd *against* Ashley and Ringo.

ment of so much money, to the use of the party, for which the assumpsit would lie. 3 *Esp. N. P. Cases* 571. And the court will bear in mind that this was in England, where choses in action were not assignable. But we will find the case of *Floid vs. Day*, 3 *Mass. Rep.*, more full in point: " Floid, the plaintiff, having a demand upon one Pilsberry, appointed the defendant, Day, her agent to recover for her a sum of money, in satisfaction of her demand; the defendant commenced a suit against Pilsberry, and the matter was then compromised, by Pilsberry's agreement to give three hundred dollars for a discharge from the plaintiff's demand in full; for this sum the defendant instead of money, took Pilsberry's note, payable to himself, and discharged Pilsberry, as'he was authorized to do by the plaintiff, so that she had no remedy except against the the defendant. Upon this state of facts, the court decided that the plaintiff could not maintain trover for the note, but that the defendant having, instead of money, received the note of Pilsberry, and discharged him, the property of the note was in the defendant, and he became immediately answerable to the plaintiff for the money, as for ' so much money received by him for her use; and an action of assumpsit was her proper remedy.' For although the defendant received no money, yet by his transaction, he discharged Pilsberry from the plaintiff's demand on him for money, and he must be considered as having made himself answerable to the plaintiff for the money he ought to have received of Pilsberry." The above is an extract from the opinion of the court in the case of *Beardsly vs. Root*, 11 *J. R.* 469; the same principle is to be found in the case of *Denton, and others, vs. Livingston*, 9 *J. R.* 96. See 2 *Saund.* 643; *Ld. Raym.* 1072, *Clark vs. Withers.* These authorities do establish the principle for which the plaintiffs in error are contending, to wit: that the defendants having filled up the blank endorsement, and sued in their own names, first, discharged Finley from the suit of the plaintiffs by releasing their right of action against him, and vesting it in themselves. Second, that the note received, and endorsement filled up to the defendants, was money or money's worth, received to the use of the plaintiffs, and for which an action of assumpsit will lie for money had and received.

Assumpsit lies for money, against a sheriff, for money collected on an

execution, without a previous demand.   1 *Wend.* 534.   And against an agent, if he sells the goods of his principal and includes the amount of sale in a note to himself with other demands due him, 6 *Cow. note* *A.* 183, and in that case the court refused to grant a new trial, on the ground that the plaintiff had not shown a demand.   And the rule is, when a new duty is promised to be paid, as, if in consideration of all moneys lent to the defendant he promised to pay them again on request, no actual request is necessary.  ·  1 *Saund.* 33, *N.* (2.)

TRAPNALL & COCKE, *Contra:*

The two papers first offered in evidence prove nothing more than that the defendants had received certain notes of the plaintiffs for collection.   The proof contained in the third paper amounts to the same.   For there is nothing in the letter of Ashley and Ringo which shows that the notes against Finley were subsisting legal claims upon which judgment could be recovered.   Nor does it show that Finley's circumstances were such that they could certainly make the money. On the contrary it shows that Finley was insolvent, that there were adverse claims upon the property, and debts which would take precedence of those due the plaintiffs.   It shows they had immediately adopted the most summary proceeding to secure the plaintiffs' debts by causing Finley's property to be seized upon by attachment, and retained in the custody of the Sheriff.   It is true they express a belief that there will be property enough to satisfy the several claims against Finley, embraced in the attachment suits, but even of this they were not certain.   The letter, so far from furnishing evidence of Finley's solvency, shows conclusively that his situation was precarious, and that there was doubt of his ability to pay.

It is well settled by the authorities, that to enable the plaintiffs to recover in an action like this, it is absolutely necessary they should prove some damage sustained by the failure of the defendants to prosecute and collect the notes.   To do this it would be necessary to prove that the notes in question were unsatisfied and just demands, upon which judgment could have been recovered; that the obligors in the notes were solvent, or at least that the money could have been collected by the exercise of a proper degree of skill and dili-

Palmer and Southmayd *against* Ashley and Ringo.

gence on the part of the attorney. Merely receiving the note for collection cannot, of itself, render the attorney liable for the amount thereof, should he fail to collect. A law imposing such a liability would be at war with every principle of common sense and common justice. No prudent attorney would ever receive a note for collection if, by so doing, he would become absolutely bound to pay the debt, or ever subject himself to an action, should the debtor prove insolvent. The liability of the attorney can only begin when he has been guilty of some neglect or mismanagement, to the loss and injury of his client. That neglect and injury must be shown by positive proof on the part of the plaintiff, and will not be presumed by the court. 2 *Stark. Ev.* 136. The case of *Stephenson vs. Eccles,* 3 *Bibb,* 517, is directly in point, and conclusively establishes the principle for which we contend. It was an action against an attorney for neglect in the management of a suit. We infer, from the opinion of the court, that Eccles had received a note to sue on and collect for Stephenson, and so mismanaged the case as that Stephenson was nonsuited.

Before the trial of the suit brought by Stephenson against Eccles for his negligence, the record of the former suit, and a copy of the note on which it was founded, transcribed into the record, were given in evidence to prove the justice of the demand. The Supreme Court decided that the copy of the note was incompetent for that purpose, unless the original had been shown to have been destroyed or otherwise out of the power of the plaintiff to produce. And even then it would not have been admissible without proof of the execution of the original. For if the original itself had been produced it must have been proven before it could have been read in evidence. A motion was made in this case, as in the one before the court, to instruct the jury to find as in case of a non-suit, which was overruled by the Circuit Court, and the appellate court say, " the refusal so to instruct the jury was no doubt predicated upon the supposition that the justice of the debt or demand for which the former suit had been brought was sufficiently established. But this does not appear to be the case. The copy of the note, as we have already decided, was inadmissible;

11

and as the plaintiff was non-suited in the former action, the record of that suit was no evidence of the justice of the debt for which it was brought. It was contended, however, that the plaintiff without such proof was entitled to recover the amount of the costs of the former suit. But it is clear that if the debt was not just, he could not have succeeded in the former action, notwithstanding it had been prosecuted to a final trial: at least, we cannot presume that he would have done so, and if he could not have succeeded in that suit, he cannot have sustained an injury by a failure to prosecute it. There being then no proof of the plaintiff's right to recover in the former suit, the court ought to have instructed the jury as in the case of a non-suit." In the present case no testimony whatever was introduced to prove that the several demands mentioned in the three papers given in evidence were just. This proof was essential to enable the plaintiffs to make out their case, and having failed to produce it, the court properly instructed the jury to find as in a case of a non-suit. As there was no evidence tending to prove the count for money had and received, there was consequently no error as to that count in the instructions given by the court.

LACY, *Judge*, delivered the opinon of the court:

In the case of *Cummins vs. McLain and Badgett*, and in *Sevier vs. Holliday*, decided during the present term, this court has declared that an attorney at law cannot be held liable for money had and collected by him as such attorney, unless it be first proved that he either failed to prosecute the claims put into his hands for collection, with due and proper diligence, or that he had collected the money and had refused to pay it over on demand, or to remit it according to instructions. His liability depends upon the principle of agency, and he holds the money, when collected, in the character of bailee. The proof in this case wholly fails to show that the claims received for collection were upon solvent persons, or that the money was ever received from them, or that there was a demand and refusal.

The evidence only proves that the attorneys executed their receipt for the collection of certain notes, and that they proceeded upon some

Palmer and Southmayd *against* Ashley and Ringo.

of them, by means of attachment, to enforce their collection. The plaintiffs below, having failed to prove culpable negligence, of course the court properly instructed the jury to find as in a case of non-suit. The judgment of the Circuit Court is therefore affirmed with costs.